Filed 2/21/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DINA HATAISHI, | B244769 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC420436) |
| FIRST AMERICAN HOME BUYERS PROTECTION CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles F. Palmer, Judge.  Affirmed.

Law Offices of Lisa L. Maki and Lisa L. Maki; Kiesel + Larson and Paul R. Kiesel for Plaintiff and Appellant.

Dentons US, Joel D. Siegel and Paul M Kakuske for Defendant and Respondent.

_____

**INTRODUCTION**

Named plaintiff Dina Hataishi (Plaintiff) appeals from a trial court order denying her motion for certification of a California class of Defendant First American Home Buyers Protection Corporation's (First American) customers whose telephone conversations were recorded without warning.  Plaintiff contends that First American's conduct violates Penal Code[1] section 632, which prohibits the intentional recording of a "confidential communication" without the consent of all parties to the communication. The trial court denied Plaintiff's motion for class certification for lack of ascertainability, community of interest and superiority.  We affirm on the ground that the proposed class lacks the requisite community of interest and do not reach the court's other bases for denying class certification.

Our Supreme Court has held that "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."  (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 777 (*Flanagan*).)  Here, the trial court ruled that determining whether an individual plaintiff had an objectively reasonable expectation that his or her telephone conversation would not be recorded is a question of fact subject to individualized proof. We conclude the trial court applied the correct legal standard and that its ruling is supported by substantial evidence.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.      *First American's Call Recording System*

First American issues one-year home warranty plans to customers in 46 states, including California.  The plans typically cover the major systems and appliances in a customer's home.

---

[1]      All future statutory references are to the Penal Code unless otherwise specified.

Customers may make warranty claims with First American by calling an "800" number printed on the warranty contract. In addition, First American's Inside Sales group makes outbound calls to existing customers as part of various marketing campaigns or to solicit customers to renew their home warranty contracts.

All calls between First American and its customers—whether inbound calls by the customer or outbound calls by the Inside Sales group—are recorded by First American's Voice Print International, Inc. (VPI) system. The VPI system is a "full-time" call recording system. The recording equipment cannot be turned off by the Inside Sales group representatives who make outbound calls.

A customer placing an inbound call to First American is greeted with the following automated disclosure regarding call monitoring or recording: "First American Home Buyer's Protection - your first choice in home warranty. To ensure the highest quality service your call may be monitored or recorded." The customer cannot bypass the disclosure.

The automated disclosure regarding call monitoring or recording is not played when a customer receives an outbound call from the Inside Sales group. Prior to 2009, First American also did not have a policy requiring Inside Sales group representatives to advise customers that outbound calls would be recorded.[2] Nor did First American's Sales, Policy, and Procedure Manual provide Inside Sales group representatives with directions for advising customers that calls would be recorded.

2.      *Plaintiff's Call History with First American*

In April 2005, Plaintiff purchased a one-year First American home warranty plan. She renewed her plan annually for the next three years, until it expired on May 18, 2009.

Between April 20, 2005 and May 19, 2008 (the date Plaintiff received her first outbound call from an Inside Sales group representative), Plaintiff made approximately 12 inbound calls to First American to either renew her warranty plan, or to make, or

---

[2]      In October 2009, First American implemented a policy requiring its representatives to begin each outbound call with a customer by identifying themselves and informing the customer that the call will be recorded.

follow-up on, warranty claims she had made pursuant to the plan. During each of those inbound calls, Plaintiff was advised by First American's automated disclosure that the "call may be monitored or recorded." Plaintiff never told the First American representative that she refused to be recorded and she never terminated the call to avoid being recorded.

Apart from her interactions with First American, Plaintiff also confirmed that she had participated in "dozens and dozens and dozens" of telephone calls with companies where she understood her call could be recorded or monitored for quality assurance. As with her calls to First American, Plaintiff did not object to being recorded during any of these calls.

On May 19, 2008, Plaintiff received an outbound call from First American's Inside Sales group. On May 27, 2009, Plaintiff received another outbound call from the Inside Sales group. Each call was recorded by First American's VPI system. The recordings confirmed that Plaintiff did not receive a disclosure that the calls would be recorded.

3.     *The Operative Second Amended Complaint*

Plaintiff's operative second amended complaint asserts a single cause of action for statutory invasion of privacy in violation of section 632 on behalf of Plaintiff and other current, former and prospective customers of First American whose telephone conversations were recorded without the customers' knowledge or consent. The complaint seeks statutory penalties pursuant to section 637.2 of $5,000 per violation of section 632, injunctive relief, and attorney fees pursuant to Code of Civil Procedure section 1021.5.

4.     *Plaintiff's Motion for Class Certification*

Plaintiff moved for certification of an opt-out class defined as follows: "All persons within the state of California who received telephone calls from employees, agents or representatives of First American Home Buyers Protection Corporation's Inside Sales division and whose telephone conversation(s) were recorded without warning from July 13, 2006 to October 27, 2009."

4

With respect to the community of interest requirement, Plaintiff argued that common issues of law and fact predominated because: (1) First American was the only defendant; (2) First American's policy was to record all outbound calls by its Inside Sales group; (3) the outbound calls were not preceded by an automated warning that the call would be recorded; and (4) prior to 2009, First American did not direct its Inside Sales group to advise customers it was recording outbound calls. Plaintiff also maintained that the two outbound calls she received were typical of those received by other putative class members, and that she and her counsel would fairly and adequately protect the interests of the class.

   5.     *First American's Opposition to Class Certification*

In opposition to Plaintiff's class certification motion, First American principally argued that Plaintiff's section 632 claim presented numerous individual factual issues. Among other things, First American argued that specific factual findings were required to be made to determine whether an individual plaintiff reasonably believed that his or her call with the Inside Sales group would not be recorded. In that regard, First American contended that each putative class member's unique experiences—including the length of the class member's relationship with First American, the number of times the class member heard First American's automated disclosure regarding the recording of inbound calls, and the class member's experience with other businesses that monitor calls for quality assurance—would be relevant to assessing whether a particular class member reasonably believed an outbound call from First American would not be recorded.

In support of the contention, First American cited Plaintiff's unique circumstances and experience—e.g., the dozen or so inbound calls Plaintiff made to First American in which she was repeatedly advised the call "may be monitored or recorded." First American also presented the declaration of its marketing expert, Linda Golden, who conducted an internet survey of California homeowners to determine customer expectations regarding call monitoring and recording for quality assurance. The survey results showed that 61.6 percent of qualified participants would expect a call from a company to be monitored or recorded for quality assurance if they had received an

automated disclosure during a prior call to the company advising that the call may be monitored or recorded.

Additionally, because section 632 does not apply to a "radio" device, First American argued that Plaintiff's claim raised individualized questions concerning whether each outbound call was received via a landline, cellular or cordless telephone.

6.      *The Trial Court's Ruling*

The trial court ruled that Plaintiff failed to meet her burden to establish an ascertainable class, predominate common factual questions, and the superiority of a class action.

On commonality, the trial court found that an individual inquiry was required to determine whether each putative class member had an objectively reasonable expectation that his or her telephone conversation with First American would not be recorded. The court rejected Plaintiff's contention that the objective reasonableness of each plaintiff's expectation could be assessed by reference to First American's uniform call recording procedures. On the contrary, the court found the reasonableness of an individual plaintiff's expectation will vary depending on his or her past experiences with First American, including the number of calls the individual previously made to First American in which he or she was advised that the call would be monitored or recorded.

The trial court also found that a call-by-call inquiry would be required to determine whether a landline, cellular or cordless telephone had been used to receive a particular outbound call. Plaintiff conceded that the operative second amended complaint pled only a cause of action for violation of section 632, which does not apply to cellular or cordless telephones, but argued that this should not defeat commonality because the complaint could be amended to assert a claim under section 632.7, which prohibits recording or eavesdropping upon cellular or cordless telephone calls. Plaintiff, however, did not file a motion to amend, nor did she present a declaration addressing the factors

6

specified in rule 3.1324 of the California Rules of Court.[3]  The trial court expressed concern that due process required Plaintiff to bring a motion, to which First American would have an opportunity to respond, before the court could consider granting leave to amend the complaint.  Plaintiff conceded the point and agreed to "make a formal motion" asking "the court to amend the complaint to include a [section] 632.7 claim . . . ."

## DISCUSSION

1.    *Class Certification Principles*

    a.    *Standard of review*

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .'  The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members.  [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).)  The party also must demonstrate there are "substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

As " 'trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*Sav-On, supra,* 34 Cal.4th at p. 326.)  Thus, "in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation].  Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence

---

[3]    California Rules of Court, rule 3.1324, subdivision (b) requires a declaration to be filed with a motion to amend the pleadings that specifies "(1) The effect of the amendment; [¶] (2) Why the amendment is necessary and proper; [¶] (3) When the facts giving rise to the amended allegations were discovered; and [¶] (4) The reasons why the request for amendment was not made earlier."

to support the court's order." ' [Citations.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436.) Accordingly, "on appeal from the denial of class certification, we review the reasons given by the trial court for denial of class certification, and ignore any unexpressed grounds that might support denial." (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843-844.) "We may not reverse, however, simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order. [Citation.]" (*Ibid.*)

### b. *Predominate common questions requirement*

The " ' "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' [Citation.]" (*Brinker, supra,* 53 Cal.4th at p. 1021.) The "[p]laintiffs [have the] burden to establish the requisite community of interest and that '. . . questions of law or fact common to the class predominate over the questions affecting the individual members.' [Citation.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.)

"Common issues are predominant when they would be 'the principal issues in any individual action, both in terms of time to be expended in their proof and of their importance . . . .' [Citation.] A '. . . class action cannot be maintained where each member's right to recover depends on facts peculiar to his case . . . ' because ' . . . the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover . . . . [Citation.]' [Citation.]" (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 667-668.) "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." (*Brinker, supra,* 53 Cal.4th at p. 1025.) Proof of most of the important issues as to the named plaintiffs must supply the proof as to all members of the class. (See *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 815.)

Although on review we assume all causes of action have merit, " 'issues affecting the merits of a case may be enmeshed with class action requirements . . . .' [Citations.] When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them. [Citations.] The rule is that a court may 'consider[ ] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.' [Citations.]" (*Brinker, supra,* 53 Cal.4th at pp. 1023-1024.) More specifically, "whether an element may be established collectively or only individually, plaintiff by plaintiff, can turn on the precise nature of the element and require resolution of disputed legal or factual issues affecting the merits." (*Id.* at p. 1024.)

"Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Brinker, supra,* 53 Cal.4th at p. 1022.)

With these rules in mind, we turn to Plaintiff's claim under section 632 and the trial court's ruling denying class certification.

2. *A Communication Is "Confidential" Under Section 632 if a Party Has an Objectively Reasonable Expectation That the Conversation Is Not Being Overheard or Recorded*

Section 632, part of California's Invasion of Privacy Act (Privacy Act), prohibits the intentional recording of a "confidential communication" without the consent of all parties to the communication. Specifically, section 632, subdivision (a) imposes liability on "[e]very person who, intentionally and without the consent of all parties to a *confidential communication*, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio . . . ." (Italics added.)

9

Section 632, subdivision (c) defines the term " 'confidential communication' " to "include[ ] any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but *excludes* a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in *any other circumstance* in which the parties to the communication *may reasonably expect that the communication may be overheard or recorded*." (Italics added.)

In *Flanagan, supra,* 27 Cal.4th 766, our Supreme Court granted review to resolve two conflicting lines of cases pertaining to the meaning of "confidential communication" under section 632. One line of authority known as the "Frio Test" held that "under section 632 'confidentiality' appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation. " (*Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1490 (*Frio*).) Under this line of authority, a plaintiff proves a conversation is "confidential" by showing he or she has "an objectively reasonable expectation that the conversation is not being *overheard or recorded*." (*Flanagan*, at p. 768, italics added.) The other line of authority known as the *O'Laskey* test held that "a conversation is confidential only if the party has an objectively reasonable expectation that the content will not *later be divulged to third parties*." (*Flanagan*, at p. 768, citing *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241, italics added.)

After examining section 632's language and purpose, the *Flanagan* court endorsed the *Frio* test and disapproved of the *O'Laskey* line of cases. The Supreme Court reasoned that "[b]y focusing on 'simultaneous dissemination,' not 'secondhand repetition' [citation], the *Frio* definition of 'confidential communication' . . . better fulfills the legislative purpose of the Privacy Act by giving greater protection to privacy interests than does the *O'Laskey* standard." (*Flanagan, supra,* 27 Cal.4th at p. 775.) Thus, the Supreme Court concluded that "a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Id.* at pp. 776-777.)

10

In *Kearney v. Salomon Smith Barney, Inc*. (2006) 39 Cal.4th 95 (*Kearney*), the Supreme Court revisited the showing necessary to establish that a communication is "confidential" under section 632. There, the trial court sustained a demurrer without leave to amend on the ground that the Georgia-based defendant could not be held liable under section 632 for recording telephone conversations with California residents because the conduct was permissible under Georgia law. The Court of Appeal affirmed, but the Supreme Court reversed, holding that section 632 applied to conversations in which only one party was in California.

Although *Kearney* was primarily a choice-of-law case, the Supreme Court's governmental interest analysis required it to assess the scope of section 632 and the interests protected by the statute. The court concluded that California had a "strong and continuing interest in the full and vigorous application of . . . section 632," but noted that the statute prohibits monitoring or recording only "without the knowledge or consent of all parties to the conversation" (*Kearney, supra,* 39 Cal.4th at p. 125, italics omitted) and only " 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded' " (*id.* at p. 117, fn. 7, quoting *Flanagan, supra,* 27 Cal.4th at p. 777). The Supreme Court nevertheless rejected the Court of Appeal's suggestion that, under California law, "even in the absence of an explicit advisement, clients or customers of financial brokers . . . 'know or have reason to know' that their telephone calls with the brokers are being recorded." (*Kearney,* at p. 118, fn. 10.) The court noted that no authority had been cited "establishing such a proposition as a matter of law, and in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears *equally plausible* that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded . . . ." (*Ibid.*, italics added.) Underscoring the factual inquiry necessary to determine the reasonableness of the plaintiffs' privacy expectations, the court observed that "because this case is before us after the sustaining of a demurrer, we

11

cannot assume for purposes of this appeal that the telephone conversations here at issue were not 'confidential communications' within the meaning of section 632." (*Ibid.*)

With this overview, we turn to the trial court's ruling that individualized proof is required to determine whether a particular outbound telephone call was a "confidential communication" as defined by section 632.

3. *Individual Questions Predominate on the Threshold Question of Confidentiality Because the Objective Reasonableness of an Individual Plaintiff's Expectation Will Depend on the Plaintiff's Unique Circumstances*

In this case, the trial court found the requisite community of interest lacking because each putative class member, in order to establish that an outbound call was a "confidential communication" under section 632, would be required to individually prove the objective reasonableness of his or her alleged expectation that the call would not be recorded. The court based its ruling on the standard articulated in *Flanagan*, as applied by the Court of Appeal in *Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377 (*CashCall*), and evidence showing that First American's automated message for every inbound call advises customers that calls may be recorded. We conclude the trial court applied the correct legal standard and that its ruling was supported by substantial evidence.

In *CashCall*, the plaintiffs, on behalf of themselves and a class of California consumers, alleged the defendant consumer finance company monitored calls with its customers without their consent in violation of section 632. (*CashCall, supra,* 200 Cal.App.4th at p. 1383.) Except for certain limited circumstances, a customer making an inbound call to the defendant was greeted with an automated " ' "Call Monitoring Disclosure" ' which stated: ' "This call may be monitored or recorded for quality control purposes." ' " (*Id.* at p. 1385.) However, the Call Monitoring Disclosure was never provided on outbound calls from the defendant's employees to its customers. Based on these undisputed facts, the defendant moved for summary judgment, asserting, among other things, that none of the calls with defendant's employees were "confidential

communications" within the meaning of section 632.  (*Id.* at pp. 1386, 1396.)  The trial court granted summary judgment, but the Court of Appeal reversed.

Applying the definition of "confidential communication" articulated by the Supreme Court in *Flanagan*, the *CashCall* court determined that defendant had failed to meet its "burden to present evidence showing plaintiffs (and the class members) had no reasonable expectation of privacy as a matter of law . . . ."  (*CashCall, supra,* 200 Cal.App.4th at p. 1397.)  In reaching this conclusion, the court made clear that it was not expressing an opinion as to whether plaintiffs would ultimately prevail on the issue at trial.  (*Id.* at p. 1396.)  On the contrary, the *CashCall* court observed that, consistent with *Flanagan* and *Kearney,* "[t]he issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on *numerous specific factors*, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures."  (*Ibid.*, italics added.)  Given the "limited record," the court held "factual issues exist on the reasonable expectation issue and thus summary adjudication on plaintiffs' section 632 claim was not warranted."  (*Ibid.*)

Plaintiff does not quarrel with the *CashCall* court's conclusion, or with the list of factors the court identified as relevant to the assessment of whether there exists an objectively reasonable expectation that no one is secretly listening to a telephone conversation.  Instead, Plaintiff contends that *CashCall* is applicable to only the specific circumstances of eavesdropping, and argues that the factors it identified would not be relevant to the reasonableness of an expectation that a call will not be recorded.  In essence, Plaintiff posits that the reasonableness of a party's expectation concerning eavesdropping is subject to a factual inquiry, but the reasonableness of an expectation concerning recording is not.  Stated differently, Plaintiff contends liability is established merely by showing there was no notification the communication would be recorded, regardless of whether one could reasonably expect not to be recorded.

13

Contrary to Plaintiff's position, nothing in the language of section 632 or the case law interpreting "confidential communication" suggests that recording a conversation without advising the other party constitutes a per se violation of the statute. We acknowledge that, for purposes of the summary judgment motion in *CashCall*, "it was assumed that the calls were not recorded; [rather] the supervisor would listen to the call while the conversation was occurring." (*CashCall, supra,* 200 Cal.App.4th at p. 1385.) Be that as it may, we see no reason why the factors listed in *CashCall* would not apply equally where a business records telephone conversations with its customers. Nothing about those factors is peculiar to eavesdropping or incongruent with assessing the reasonableness of a plaintiff's alleged expectation that a call will not be recorded. Indeed, other courts that have addressed the issue have determined that reasonableness, even with respect to an expectation concerning recording, is a factual question for the jury to decide. (See, e.g., *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 926 [jury must decide "whether it was reasonable for plaintiff to expect, in the circumstances of his particular workplace, that an interaction between coworkers would not be subject to covert videotaping"]; *Lieberman v. KCOP Television, Inc*. (2003) 110 Cal.App.4th 156, 169 ["It is for the jury to decide whether under the circumstance presented [the plaintiff] could have *reasonably* expected that the communications were private" and, thus, would not be recorded].)

We agree with *CashCall*, and the trial court, that the determination whether an individual plaintiff had an objectively reasonable belief that his or her conversation with First American's Inside Sales group would not be recorded will require individualized proof of, among other things, "the length of the customer-business relationship [and] the [plaintiff's] prior experiences with business communications . . . ." (*CashCall, supra,* 200 Cal.App.4th at p. 1396.) Indeed, as the trial court alluded to at the class certification hearing, Plaintiff's unique circumstances—including the fact that she had made approximately a dozen calls to First American during which she was told that the call "may be monitored or recorded"—sets her apart, for purposes of assessing the reasonableness of her expectations, from other customers who never heard the disclosure

14

or heard it only a few times. Likewise, Plaintiff's prior experience with other businesses—the "dozens and dozens and dozens" of telephone calls where she understood her call could be recorded or monitored for quality assurance—could support a jury finding that she lacked an objectively reasonable expectation that her calls with First American would not be recorded. A jury could rationally reach a different conclusion concerning another plaintiff who has not had the same experience. In any event, due process requires that First American be permitted to cross-examine an individual plaintiff regarding those experiences that may impact the reasonableness of his or her alleged confidentiality expectation.

The trial court's conclusion also is supported by the declaration offered by First American's marketing expert, Ms. Golden. Ms. Golden's survey results showed that customers have divergent privacy expectations based on their unique backgrounds and experiences, including, in particular, whether they were previously advised by a company that an inbound call may be monitored or recorded. (See *Sav-on, supra,* 34 Cal.4th at p. 333 [noting general relevance of "statistical evidence, sampling evidence [and] expert testimony" in class action cases].)

Substantial evidence supports the trial court's conclusion that assessing the objective reasonableness of an individual plaintiff's expectation of confidentiality will require individualized proof of the plaintiff's prior experiences with First American and other business communications. (See *CashCall, supra,* 200 Cal.App.4th at p. 1396.)

4.      *Amending the Complaint to Add a Claim for Violation of Section 632.7 Will Not Ameliorate the Need for Individualized Proof*

In her reply brief, Plaintiff contends that the need to engage in an individualized factual inquiry could have been eliminated by permitting her to amend the complaint to add a claim for violation of section 632.7. Because section 632.7 applies to cellular and cordless telephone calls and has no "confidential communication" requirement, Plaintiff argues granting leave to amend would have addressed the trial court's concerns regarding both the type of phone used and the need to individually assess the reasonableness of

15

each class member's expectation of confidentiality. Plaintiff maintains the trial court abused its discretion by refusing to grant leave to amend. We disagree.

To begin, as we noted in our discussion of the trial court proceedings, Plaintiff did not file a formal motion to amend, nor did she make the evidentiary showing required by rule 3.1324 of the California Rules of Court. Moreover, when the trial court expressed concern that due process required that First American have an opportunity to respond to a written motion, Plaintiff conceded the point and agreed to "make a formal motion" asking "the court to amend the complaint to include a [section] 632.7 claim . . . ." We find no abuse of discretion in the trial court requiring Plaintiff to bring a motion, compliant with the Rules of Court, to which First American would have an opportunity to respond—particularly in light of Plaintiff's express agreement to do so.

Apart from this, we also conclude that adding a section 632.7 claim would not have dispensed with the need to engage in an individualized factual inquiry. The trial court found that Plaintiff's proposed methodology for identifying outbound calls provided no means to determine whether a landline, cellular or cordless telephone had been used to receive the subject call and that a call-by-call inquiry would be required to make this determination. Even if a section 632.7 claim were added, this would not eliminate the need to determine what type of telephone was used, because the elements of a section 632 claim differ from those of a section 632.7 claim. In particular, to determine whether an individual plaintiff will be required to establish that the subject call was a "confidential communication"—as required by section 632 for landline communications, but not by section 632.7 for cellular or cordless telephone communications—the trier of fact must first determine what type of telephone was used to receive the subject call.[4]

---

[4] As the *Flanagan* court explained, in deciding not to include a "confidential communication" requirement in section 632.7, "the Legislature found that 'the advent of widespread use of cellular radio telephone technology means that persons will be conversing over a network which cannot guarantee privacy in the same way that it is guaranteed over landline systems.' " (*Flanagan, supra,* 27 Cal.4th at pp. 775-776.) Thus, while together sections 632 and 632.7, "protect[ ] against intentional, nonconsensual recording of telephone conversations regardless of the content of the

16

That determination, as the trial court found, will require an individualized call-by-call inquiry.

Because the trial court did not commit legal error in concluding common questions of fact do not predominate, we need not consider the other grounds the court identified for denying class certification. (*Mora v. Big Lots Stores, Inc*. (2011) 194 Cal.App.4th 496, 512, fn. 14.)

## DISPOSITION

The order is affirmed. First American is entitled to its costs on appeal.


**CERTIFIED FOR PUBLICATION**



KITCHING, J.

We concur:



KLEIN, P.J.



ALDRICH, J.

---

conversation or the type of telephone involved" (*id.* at p. 776), for landline communications, section 632 imposes the added requirement that the plaintiff establish "an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Id.* at p. 777.)